JUL 21 2026 PM2:08
FILED - USDC - FLMD - JAX

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

v.

JERMAINE JAMES
a/k/a "Jock"
a/k/a "J"
a/k/a "JJ"

Case No. 3:25-cr-91(S1)-MMH-SJH
18 U.S.C. § 1962(d)
(RICO Conspiracy)
21 U.S.C. § 841
(Possession with Intent
to Distribute Controlled Substances)

**Filed under seal**

## SUPERSEDING INFORMATION

The United States Attorney charges:

## COUNT ONE
## (RICO Conspiracy)

At all times relevant to this Information:

1. The defendant, JERMAINE JAMES, also known as "Jock," "J," and "JJ," and others, known and unknown to the United States Attorney, were members and associates of a criminal organization that operated in the Middle District of Florida and elsewhere. During all times relevant to this Information, the organization was led by INDIVIDUAL 1.

2. The organization has existed under various names including Pearl World, BB4L (Block Burners for Life), K4T (Killers for Telly), and Slime World. Beginning on an unknown date, but no later than 2019, the group began calling itself K4T and, in or about 2023, the group began calling itself Slime. In its most recent

iteration, the criminal organization was known as "Slime" and will be referred to as such herein.

3. The Slime organization existed primarily to generate revenue through various criminal activities such as drug trafficking and robberies. The organization's primary means of generating income was through drug trafficking, wherein members and associates of the organization operated various houses for the purpose of selling, and from which they sold, drugs and stored firearms (hereinafter referred to as "trap houses"). The Slime organization also used violence and intimidation to establish the group's dominance in the greater Jacksonville area, protect its territory, encroach on rivals' territory and trap houses, and maintain its drug trafficking operation. This violence and intimidation included assaults, shootings, attempted murders, and murder.

4. INDIVIDUAL 1 led the Slime organization in conjunction with older members, who were primarily involved in the drug trafficking side of the enterprise and were at the top of the organization. The older members, including the defendant, generally operated trap houses and were occasionally asked to commit acts of violence. At the bottom of the enterprise were younger members and associates, many of whom were former friends of INDIVIDUAL 1's most recently deceased brother. These younger members and associates were to, and did, commit acts of violence in furtherance of the Slime organization and to intimidate rival groups and

drug dealers, and for their actions, at times, received promises of payment and increased status in the organization. Additionally, in conjunction with members who operated trap houses, the organization often used associates to operate as midlevel drug dealers.

5. Slime was primarily active in the Northside and Oceanway neighborhoods of the greater Jacksonville, Florida area.

6. At times, members and associates of Slime identified themselves as members of the organization on social media accounts such as Facebook, Instagram, Spaces, and Clubhouse, wearing clothing with "Slime," "BB4L," "K4T," "Slime World," and/or Slime insignia depicted on it, and by participating in music videos in which they claimed membership or association with Slime. Members and associates of Slime regularly filmed music videos in which they wore merchandise with Slime insignia and made Slime hand signs to show their membership in the enterprise. Moreover, some rap lyrics referenced specific acts of violence the group had committed to serve as a warning to rival groups. At times, members of Slime referred to each other as "slime," or used "slime" as a verb to describe robbing or killing members of opposition groups or rival gangs.

7. The Slime organization, including its leaders, members, and associates, constituted an "enterprise" as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact, that engaged in, and the activities of which affected,

interstate and foreign commerce ("Slime" or "the Enterprise"). The Enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

## Purposes of the Slime Enterprise

8. The purposes of the Slime Enterprise included, but are not limited to, the following:

a. promoting and enhancing the reputation and position of the Enterprise with respect to rival criminal organizations and opposition groups;

b. preserving and expanding the power, territory, and reputation of the Enterprise through intimidation, threats of violence, and acts of violence, including assault, shootings, robbery, and murder;

c. keeping rivals and opposition groups in fear of the Enterprise and its members and associates through threats of violence and acts of violence;

d. enriching members and associates of the Enterprise through criminal activity, including robbery and drug trafficking; and

e. ensuring discipline within the Enterprise and members' and associates' compliance with the Enterprise's rules through threats of violence and acts of violence.

**Means and Methods of the Slime Enterprise**

9. Among the means and methods by which members and associates of Slime conducted and participated in the conduct of the affairs of the Enterprise were the following:

a. Members and associates of Slime committed, attempted to commit, conspired to commit, and threatened to commit acts of violence, including acts involving assault, shootings, robbery, and murder, to enhance the Enterprise's reputation and protect and expand the Enterprise's criminal operations.

b. Members and associates of Slime used and threatened to use physical violence against various individuals, including members of rival criminal groups or individuals suspected of committing violence against Slime members and associates, to serve as a warning that Slime was willing and able to retaliate if any opposition groups tried to interfere with Slime, its members and associates, or its drug trafficking operation.

c. Member and associates of Slime distributed, and possessed with intent to distribute, controlled substances drugs in order to make money to further the affairs of the Enterprise.

d. Members and associates of Slime operated trap houses, *i.e.*, houses from which they sold, and possessed with intent to sell, controlled substances to generate revenue for the Enterprise.

**The Racketeering Conspiracy**

10. Beginning on an unknown date but no later than in or about 2019, and continuing through on or about June 18, 2025, in the Middle District of Florida and elsewhere, the defendant, and others known and unknown to the United States Attorney, each being a person employed by and associated with Slime, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly, willfully, and unlawfully conspired with each other, to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Slime Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1) and (5), which pattern of racketeering activity consisted of:

a. multiple acts involving:

i. murder, chargeable under Florida Statutes §§ 782.04, 777.011, and 777.04; and

ii. robbery, chargeable under Florida Statutes §§ 812.13, 777.011, and 777.04; and

b. multiple offenses involving drug trafficking, in violation of 21 U.S.C. §§ 841, 846, and 856.

11. It was further part of the conspiracy that the defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

**Overt Acts**

12. In furtherance of the conspiracy and to accomplish the object of the conspiracy, the defendant and others known and unknown to the United States Attorney, committed, and caused to be committed, the following overt acts, among others, in the Middle District of Florida and elsewhere:

a. Beginning on an unknown date, but no later than on or about July 29, 2024, and continuing through on or about March 5, 2025, the defendant conspired with other members and associates of the Slime enterprise to distribute, and to possess with intent to distribute, controlled substances, including fentanyl, cocaine base, marihuana, and methamphetamine.

b. Beginning on an unknown date, but no later than on or about June 7, 2024, and ending no later than on or about September 11, 2024, the defendant maintained a place located on Pitts Road in Jacksonville, Florida, for the purpose of distributing controlled substances including MDMA (3,4-Methylenedioxymethamphetamine), cocaine base, and fentanyl.

c. Beginning on an unknown date, through no later than on or about December 10, 2024, the defendant ordered acts of violence to collect drug debts, and in fact caused the assault of the domestic partner of a low-level drug dealer.

d. Beginning on an unknown date, and ending on an unknown date, no later than March 2025, the defendant supplied drugs to other Slime members for distribution.

e. On or about October 3, 2024, the defendant contributed money to the bail another Slime member out of state custody.

All in violation of 18 U.S.C. § 1962(d).

## COUNT TWO
**(Possession with Intent to Distribute Controlled Substances)**

March 5, 2025 (RL) (KS) (EJC)

On or about ~~September 11, 2024~~, in the Middle District of Florida, the defendant,

JERMAINE JAMES,
a/k/a "Jock"
a/k/a "J"
a/k/a "JJ,"

did possess with the intent to distribute controlled substances. The violation involved MDMA and marihuana, Schedule I controlled substances, and fentanyl, 28 grams or more of a mixture and substance containing cocaine base, and 50 grams or more of actual methamphetamine, Schedule II controlled substances, and is therefore punished under 21 U.S.C. § 841(b)(1)(A).

In violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A).

## FORFEITURE

1. The allegations contained in Counts One and Two are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 1963 and 21 U.S.C. § 853.

2. Upon conviction of a violation of 18 U.S.C. § 1962, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 1963:

a. Any interest acquired or maintained in violation of 18 U.S.C. § 1962;

b. Any interest in, security of, claims against, or property or contractual right of any kind affording a source of influence over, the enterprise which the defendant established, operated, controlled, conducted, or participated in the conduct of, in violation of 18 U.S.C. § 1962; and

c. Any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity or unlawful debt collection, in violation of 18 U.S.C. § 1962.

3. Upon conviction of a violation of 21 U.S.C. § 841(a)(1), the defendant shall forfeit to the United States, pursuant to 21 U.S.C. §§ 853(a)(1) and (2), any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as a result of such violation, and any property used, or intended to be

used, in any manner or part, to commit, or facilitate the commission of, such violation.

4. The property to be forfeited includes, but is not limited to:

a. $7,443.00 in U.S. Currency, seized from the defendant on September 11, 2024; and

b. $2,136.00 in U.S. Currency, seized from the defendant on March 5, 2025.

5. If any of the property described above, as a result of any acts or omissions of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred, sold to or deposited with a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to 18 U.S.C. § 1963(m) and 21 U.S.C. § 853(p).

GREGORY W. KEHOE
United States Attorney

By: ______________________
RACHEL LASRY
Assistant United States Attorney

By: ______________________
KELLI SWANEY
Assistant United States Attorney

By: ______________________
MICHAEL COOLICAN
Assistant United States Attorney
Chief, Jacksonville Division